UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:12-cr-00117-JAW |
| | ) | |
| RYAN ORTON | ) | |

**ORDER ON MOTION FOR JUDICIAL RECOMMENDATION TO REDUCE SENTENCE**

A defendant seeks a recommendation from the Court to the United States Bureau of Prisons (BOP) that he be accorded a one-year reduction in his prison term because he participated in the BOP's Residential Drug and Alcohol Program (RDAP) and in the alternative, the defendant attacks the legality of the BOP's decision not to apply the one-year reduction to him. The Court denies the defendant's motion because in reviewing the nature of his crimes, the Court would not recommend on its merits a reduction of the defendant's sentence and because his attacks on the legality of the BOP decision are non-meritorious.

**I.   BACKGROUND**

On March 17, 2014, the Court sentenced Ryan Orton to 180 months concurrent incarceration, six years concurrent supervised release, no fine, and a $300 special assessment for engaging in a conspiracy to import controlled substances, engaging in another conspiracy to launder money, and being a felon in possession of a firearm. *J.* (ECF No. 76). On June 29, 2019,[1] Mr. Orton filed a pro se motion asking the Court

---

[1]   The docket reflects that this motion was not docketed until July 1, 2019. *Def.'s Mot. for Judicial Recommendation to Reduce Sentence* (ECF No. 92). Although timing is not an issue, the Court applies the prison mailbox rule to Mr. Orton's motion due to its similarity to a petition for habeas corpus pursuant to 28 U.S.C. § 2241, as discussed below. *See Houston v. Lack*, 487 U.S. 266, 270

to recommend that BOP reduce his sentence by one year based on his successful completion of the BOP's RDAP. *Def.'s Mot. for Judicial Recommendation to Reduce Sentence* (ECF No. 92) (*Def.'s Mot.*). The United States of America (Government) responded on July 10, 2019. *Gov't's Resp. to Def.'s Mot. for Reduction* (ECF No. 93) (*Gov't's Opp'n*). Mr. Orton did not file a reply.

## II. POSITIONS OF THE PARTIES

### A. Ryan Orton's Motion

In support of his motion, Mr. Orton references a letter from United States District Judge William Smith of the District of Rhode Island in which Judge Smith issued a letter of recommendation to the BOP to reduce an inmate's sentence in circumstances that, in Mr. Orton's view, are identical to his. *Def.'s Mot.* at 1. Mr. Orton states that John O'Brien of the Designation and Sentence Computation Center of the BOP in Grand Prairie, Texas and Dr. Curry, D.A.P.C. of Federal Correctional Institution Fort Dix in New Jersey, are the individuals who have the authority to respond to the Court's sentence reduction recommendation. *Id.*

Mr. Orton quotes a BOP "policy of preclusion," which he sets forth in a "Request for § 3621(e) Offense Review":

> [I]nvolved the carrying, possession, or use of a firearm or other dangerous weapon . . . by its nature or conduct, presents a serious potential risk of physical force against the person or property of another

---

(holding that a prisoner's notice of appeal is deemed filed when it is delivered to prison authorities); *Morales-Rivera v. United States*, 184 F.3d 109, 109-10 (1st Cir. 1999) (holding that the prison mailbox rule applies to motions under 28 U.S.C. § 2255); *Reid v. New Hampshire*, 56 F.3d 332, 340 n.16 (1st Cir. 1995) (interpreting *Houston* as "holding that filing periods for prisoners are determined when submitted to prison warden" and applying this holding to a prisoner's response to a summary judgment motion). Mr. Orton's motion does not include a declaration regarding when it was mailed. However, Mr. Orton dated his motion June 24, 2019, and referenced June 29, 2019, as "today" at the end of the motion. *Id.* at 1, 3. The Court adopts the later date, June 29, 2019, as the date of filing.

2

> . . . is an attempt, conspiracy, or other offense which involved an underlying offense to commit any precluding offense . . ..

*Id.* (omissions in original). Mr. Orton asks the Court to recall the many years of drug and alcohol abuse before his arrest and the many years since his arrest of "sobriety, treatment and recovery . . .." *Id.* at 2. He also reminds the Court that his firearms offense was "simple possession." *Id.* He writes, "[i]f you recall, most of the firearms in question were registered, and safely stored, at home, and were NEVER used during the instant offense." *Id.* Mr. Orton says that the BOP is misinterpreting his offense as a "crime of violence," which he argues is contrary to the view of the United States Supreme Court. *Id.*

Mr. Orton assures the Court that even though he has been incarcerated for seven and a half years, he has had "no serious disciplinary issues, whatsoever." *Id.* He informs the Court that he has obtained his high school diploma and now realizes the impact his criminal activity had on his family and his community. *Id.* He wants to return to his family and to the free society and give back by starting a renewable energy business. *Id.* He also believes that he could offer guidance from his life experience and his efforts at rehabilitation and education to the other inmates at the Residential Reentry Center. *Id.* at 2-3. In light of his accomplishments, Mr. Orton urges the Court to write the BOP and ask it to waive its decision that he is precluded from an early release for his RDAP participation and grant him a reduction in his sentence. *Id.* at 3.

Mr. Orton attaches the referenced letter from then Chief Judge Smith dated December 15, 2017, to Jose A. Santana, Chief of the Designation and Sentence

3

Computation Center of the BOP in Grand Prairie, Texas. *Id.*, Attach. 1, *Letter from Hon. William E. Smith to Jose A. Santana* at 1-2 (*Judge Smith Letter*). Judge Smith's letter recites that he sentenced an inmate whose name is blacked out to seventy-two months of incarceration with four years of supervised release on February 23, 2017. *Judge Smith Letter* at 1. Judge Smith's letter does not reveal the unnamed defendant's crime. *Id.* Judge Smith says that he applied a two-level enhancement for possession of a firearm and describes the information that led to the enhancement:

> Information about the firearm came from wiretapped conversations in which [the defendant] claimed to have possessed one. My understanding is that law enforcement never recovered the gun in [the defendant's] possession, nor was it established that the firearm, if one did in fact exist, was used in furtherance of the conspiracy.

*Id.* at 1.

Judge Smith states that the firearm enhancement under BOP regulation prevents the defendant from being eligible to receive a year off on his sentence for completing RDAP. *Id.* (citing 28 C.F.R. § 550.55(b)). At the same time, Judge Smith writes that the "bar on receiving one year off a term of imprisonment for an offense involving a firearm does not appear to be a statutory requirement." *Id.* (citing 18 U.S.C. § 3621(e)(2)). After discussing the defendant's rehabilitation and the benefits of a re-entry program, Judge Smith acknowledges that he is "unaware of any vehicle by which [he] could amend [the defendant's] judgment to remove the firearm enhancement . . .." *Id.* Even so, Judge Smith writes that he does not think the facts of the defendant's possession "should prevent [the defendant] from receiving an early release for the successful completion of the RDAP . . .." *Id.* Judge Smith expresses

4

the hope that the BOP will consider a waiver of the prohibition of a year-off credit for the defendant's completion of RDAP.

Mr. Orton also attaches a Form BP-A0942, Request for § 3621(e) Offense Review dated August 28, 2015, and approved on September 3, 2015. *Def.'s Mot.*, Attach. 2, *Request for § 3621(e) Offense Review* at 1-2 (*Offense Review Form*). The BOP concluded that Mr. Orton's "current and/or prior offense(s)" precluded him from early release pursuant to 18 U.S.C. § 3621(e)(2)(B). *Offense Review Form* at 2. The BOP based its conclusion on three grounds: His current offense of conviction (1) involved the carrying, possession, or use of a firearm or other dangerous weapon, *id.* at 1 (citing 28 C.F.R. § 550.55(b)(5)(ii)); (2) by its nature or conduct, presents a serious potential risk of physical force against the person or property of another, *id.* (citing 28 C.F.R. § 550.55(b)(5)(iii)); and (3) is an attempt, conspiracy, or other offense which involved an underlying offense to commit any precluding offense. *Id.* (citing 28 C.F.R. § 550.55(b)(6)).

Finally, Mr. Orton attaches forty pages of certificates and other evidence that attest to his efforts at rehabilitation. *Def.'s Mot.*, Attach, 3, *Certificates in Support of Mot.* at 1-40.

### B. The Government's Response

In its response, the Government reviews the background of Mr. Orton's criminal case, noting that he pleaded guilty to a three-count Information: Count I—Conspiracy to Import Controlled Substances, a violation of 21 U.S.C. § 963; Count II—Conspiracy to Engage in Money Laundering, a violation of 18 U.S.C. § 1956(h);

and Count III—Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). *Gov't's Opp'n* at 1. The Government notes that Mr. Orton applied to the BOP to be deemed eligible for the one-year sentence reduction for his completion of RDAP but was denied on the three grounds listed on the Request for § 3621(e) Offense Review form. *Id.* at 2. The Government states that decisions "regarding whether to grant or deny eligible inmates a sentence reduction under § 3621(e) are within the BOP's sole discretion." *Id.* (citing *Downey v. Crabtree*, 100 F.3d 662, 671 (9th Cir. 1996)). The Government contends that Mr. Orton fits within the BOP categorical exclusions under 28 C.F.R. § 550.55(b)(i-iv). *Id.* Citing *Lopez v. Davis*, 531 U.S. 230 (2001), the Government asserts that the United States Supreme Court has upheld section 550.55's denial of early release based only on a felony offense that involved the carrying, possession, or use of a firearm. *Gov't's Opp'n* at 3 (citing *Lopez*, 531 U.S. at 233).

Next, the Government states that this Court is not the proper venue for Mr. Orton's request. *Id.* To properly raise this issue, the Government says, Mr. Orton should have filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241. *Id.* Further, the Government argues, habeas corpus petitions must be filed in the district in which a defendant is located and, as Mr. Orton is being held at the Federal Correctional Institution at Fort Dix in New Jersey, the District of Maine is not the correct venue for his habeas corpus petition, should he choose to file one. *Id.* at 3-4.

Finally, the Government argues that Mr. Orton's motion must fail on its merits. *Id.* at 4-6. The Government contends that Mr. Orton's individual efforts at

6

rehabilitation should not be considered because the BOP determines a prisoner's eligibility for early release on a categorical, not individual basis. *Id.* at 4-5. The Government points out that Mr. Orton is incorrect in asserting that BOP has treated his prior convictions as crimes of violence. *Id.* at 5. Finally, the Government distinguishes the case in which Judge Smith made his recommendation from Mr. Orton's case. *Id.* at 5-6.

### III. DISCUSSION

Unfortunately for Mr. Orton, the Court must deny his motion on a number of grounds. The Court divides Mr. Orton's motion into two parts: (1) his request that the Court recommend to the BOP that it waive its decision that he is precluded from an early release for his RDAP participation; and (2) his legal arguments against the BOP's policy of preclusion. Both fail for different reasons.

The Court must reject Mr. Orton's claim that the facts in his case are like the facts in the case in which Judge Smith recommended waiver of preclusion to the BOP. In Judge Smith's case, he applied the two-level enhancement for possession of a firearm, but as Judge Smith explained, the facts justifying the enhancement came solely from a wiretap in which the defendant claimed to possess a firearm. *Judge Smith Letter* at 1. Law enforcement never found a firearm and there was no evidence that the firearm, if he had one, was used in furtherance of the conspiracy. *Id.* Judge Smith's letter does not reveal the underlying crime of conviction for the defendant in his case.

7

Mr. Orton's case is markedly different. First, when he possessed the firearms in his case, Mr. Orton had previously been convicted of a felony. *See Information Charging Prior Convictions* (ECF No. 8); *Presentence Investigation Report* ¶ 28 (PSR). Second, the prior felony involved drug trafficking, the same type of crime for which he is currently incarcerated. *Information Charging Prior Convictions*; PSR ¶ 28. Third, Mr. Orton had previously been convicted of four state drug trafficking crimes before his federal drug trafficking conviction. PSR ¶¶ 25, 27, 28, 29. Fourth, Mr. Orton was charged with and convicted of importing a staggering amount of "bath salts," highly addictive drug analogues that he purchased from China and distributed by himself and with others to the people of Maine. PSR ¶¶ 3-6. Fifth, in addition to his drug trafficking offense, Mr. Orton was charged with and pleaded guilty to money laundering. *J.* at 1. Sixth, in one of the counts of his current offense, Mr. Orton was charged with and pleaded guilty to possession of a firearm by a felon. *Information* (ECF No. 2); *Min. Entry* (ECF No. 9); *J.* Seventh, unlike Judge Smith's case, Mr. Orton admitted that he actually possessed real firearms. *Gov't's Version of the Offense* at 3-4 (ECF No. 23); PSR ¶ 7. Eighth, unlike Judge Smith's case, Mr. Orton possessed not one but seven firearms. PSR ¶ 7. Ninth, unlike Judge Smith's case, in addition to the firearms, Mr. Orton possessed a ballistic vest, three stun guns, and night goggles. *Id.*; *Tr. of Proceedings* at 11:7-10 (ECF No. 82). Tenth, unlike Judge Smith's case, Mr. Orton possessed some serious weapons: two assault rifles and one 9mm pistol in addition to a twelve-gauge shotgun, two .22 caliber rifles, and one .22 caliber pistol. PSR ¶ 7. Eleventh, unlike Judge Smith's case, Mr. Orton possessed

the seven firearms because of his involvement in the underlying drug trafficking crime. *Id.* The PSR states:

> Orton reported he acquired the firearms and various devices to protect himself because he became fearful of individuals robbing or assaulting him. Orton reported that he had been the victim of robbery and assault attempts outside his residence and stated that he did not carry the firearms outside his home.

*Id.* Twelfth, unlike Judge Smith's case, Mr. Orton had $10,227 in United States currency in the same apartment where the firearms and other devices were located and, as Mr. Orton acknowledged, he possessed the firearms to protect himself and the proceeds of his drug trafficking. *Id.*

In sum, the Court does not find that Judge Smith's case, as revealed in his December 15, 2017, letter to the BOP, is at all like Mr. Orton's case. Among the crucial distinctions is that Mr. Orton possessed the firearms directly in connection to his drug trafficking and therefore the risk of violence from his possession of firearms is obvious. Because of the circumstances of his firearm possession, namely at his residence where he kept a substantial amount of cash and in the context of prior robberies and assaults, the Court concludes that Mr. Orton fits well within the BOP's preclusion of inmates whose felony conviction "by its nature . . . presents a serious potential risk of physical force against the person . . . of another." 28 C.F.R. § 550.55(b)(5)(iii). Thus, to the extent that Mr. Orton is asking the Court to recommend that BOP waive its preclusion regulation, the Court declines to do so.

The second part of Mr. Orton's motion represents an attack upon the BOP regulation and the BOP's decision to deny his request for an exception under the

9

regulation. To the extent Mr. Orton is claiming that the BOP's decision results in his being "in custody in violation of the Constitution or laws and treaties of the United States," 28 U.S.C. § 2241(c)(3), his motion likely should be construed as a petition for habeas corpus under 28 U.S.C. § 2241. *See Gambrell v. Grondolsky*, Civil Action No. 17-11173-MBB, 2018 U.S. Dist. LEXIS 58033, at *8 (D. Mass. Mar. 30, 2018) ("[A §] 2241 motion provides a remedy in the custodial court for federal prisoners challenging the execution of their sentences, such as administration of parole, prison disciplinary proceedings, or conditions of confinement"); *United States v. Chase*, No. 7-83-B-W, 2010 U.S. Dist. LEXIS 638, at *1 n.1 (D. Me. Jan. 4, 2010), *aff'd*, 2010 U.S. Dist. LEXIS 16117 (D. Me. Feb. 23, 2010) ("Most of the cases that have considered [a motion for an order granting early release eligibility] have done so in the context of a habeas corpus petition filed pursuant to 28 U.S.C. § 2241"). As such, Mr. Orton should have brought the petition in the district of confinement, in this case the United States District Court for the District of New Jersey. *See Miller v. United States*, 564 F.2d 103, 105 (1st Cir. 1977) (citing 28 U.S.C. § 2241(a)).

Even assuming the Court has jurisdiction to hear Mr. Orton's motion, his attack against the BOP regulation and the BOP's application of the regulation fails. *See Lopez*, 531 U.S. at 233 ("[T]he regulation [regarding carrying, possession, or use of a firearm] is a permissible exercise of the Bureau's discretion under 18 U.S.C. § 3621(e)(2)(B)"); *United States v. Leland*, No. 1:03-cr-00033-JAW-01, 2015 U.S. Dist. LEXIS 139503, at *2-3 (D. Me. Oct. 14, 2015). Finally, as the Government points out, Mr. Orton is incorrect when he alleges that the BOP relied upon his firearms

10

possession conviction as a crime of violence in violation of *Johnson v. United States*. 135 S. Ct. 2551, 2563 (2015).  In conclusion, for these reasons, Mr. Orton's attack on the regulation and the BOP's application of the regulation to his case is non-meritorious.

Although the Court's decision is no doubt disappointing to Mr. Orton, the Court urges him not to be discouraged.  First, his rehabilitation during his incarceration is impressive.  Second, even if it does not result in an earlier release, his participation in RDAP is its own reward.  Mr. Orton's legal troubles flow from his profound addiction to illegal drugs and if RDAP has given him the tools to control his addiction, his return to society should be that much more successful.  Third, the fact that he has planned what he is going to do constructively when he gets out is impressive.  The Court congratulates Mr. Orton for his progress in prison and wishes him well upon his release.

## IV. CONCLUSION

The Court DENIES Defendant's Motion for Judicial Recommendation to Reduce Sentence (ECF No. 92).

SO ORDERED.

> /s/ John A. Woodcock, Jr.
> JOHN A. WOODCOCK, JR.
> UNITED STATES DISTRICT JUDGE

Dated this 6th day of April, 2020