NITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:12-cr-00117-JAW |
| | ) | |
| RYAN ORTON | ) | |

**ORDER DISMISSING WITHOUT PREJUDICE MOTION FOR COMPASSIONATE RELEASE**

An inmate serving a fifteen-year sentence for conspiring to import controlled substances, for conspiring to engage in money laundering, and for possessing a firearm as a felon moves for compassionate release, seeking to be relocated to home confinement. The Court concludes that it does not have the authority to order a defendant to serve his unmodified sentence at home, absent a reduction in his sentence, and the Court does not find that he has demonstrated "extraordinary and compelling reasons" warranting a reduction in his sentence under 18 U.S.C. § 3582(c)(1)(A). The Court therefore dismisses his motion for compassionate release without prejudice.

**I.   PROCEDURAL BACKGROUND**

On March 17, 2014, the Court sentenced Ryan Orton to 180 months of incarceration on Count I, 180 months on Count II, and 120 months on Count III of an indictment, to be served concurrently, followed by a six-year term of supervised release, no fine, and a $300 special assessment of $100 per count. *Min. Entry* (ECF No. 72). The Court imposed this sentence after Mr. Orton pleaded guilty to counts one through three of an indictment that charged violations of 21 U.S.C. §§ 960, 963,

and 21 U.S.C. § 841(b)(1)(C) in connection with a conspiracy to import controlled substances, a violation of 18 U.S.C. § 1956(h) in connection with a conspiracy to engage in money laundering, and violations of 18 U.S.C. § U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2) in connection with his possession of a firearm as a felon. *J.* at 1 (ECF No. 76). On March 28, 2014, Mr. Orton filed a notice of appeal, *Notice of Appeal* (ECF No. 78), and on April 24, 2015, the Court of Appeals for the First Circuit rejected his appeal and affirmed the sentence. *J. of USCA* (ECF No. 84) (enforcing Mr. Orton's waiver of appeal).

On October 13, 2015, Mr. Orton filed a motion to reduce sentence pursuant to Amendment 782 to the United States Sentencing Guidelines, *Mot. to Reduce Sentence- USSC Amend.* (ECF No. 89), which the Court denied on October 20, 2015. *Order* (ECF No. 90). On July 1, 2019, Mr. Orton filed another motion to reduce sentence, *Mot. to Reduce Sentence* (ECF No. 92), which the Court denied on April 6, 2020. *Order on Mot. for Judicial Recommendation to Reduce Sentence* (ECF No. 94).

On November 2, 2023, Mr. Orton filed a motion for compassionate release. *Mot. for Compassionate Release* (ECF No. 95) (*Orton's Mot.*). On November 13, 2023, the Government opposed. *Resp. in Opp'n* (ECF No. 96) (*Gov't Opp'n*). Mr. Orton did not reply.

## II. THE PARTIES' POSITIONS

### A. Ryan Orton's Motion for Compassionate Release

Mr. Orton summarizes his request: "I'm writing to you to ask if you'd consider allowing me Compassionate Release to home confinement." *Orton's Mot.* at 1.

First, Mr. Orton shares his positive developments while in prison. He says that he has "served 11 ½ years in prison, achieved my GED and High School Diploma, Electrician Diploma, Associate Electronic Certification, then my Journeyman Electronic Certification, and I just graduated RDAP and my Bachelors in Business Marketing." *Id.* Mr. Orton adds that he has developed "plenty more soft skills, like typing, Spanish, flagger certification, forklift certification, and more." *Id.* Next, Mr. Orton explains the reason why he is asking for compassionate release to home confinement: "because our halfway house only has 10 beds. So I've been waiting months and months to go there." *Id.*

Mr. Orton informs the Court that he lost his father to COVID-19 and his mother to a car accident, so his "little sister needs the support of her BIG brother." *Id.* (capitalization in original). He states he has a "job already lined up at Maineworks," as well as "inquiring with the owners of Coffee by Design to guarantee full time employment." *Id.* Mr. Orton writes that he has "reached out to DEFY prison entrepreneur program" and has "a business plan, pitch, mission statement, even a domain of Clean Lifestyles for a renewable energy business." *Id.* He adds that he has "reached out to Journey and the Maine Recover Community, and other local reentry resources." *Id.* Mr. Orton represents that he has his social security card, birth certificate, and state identification "lined up for the second" he gets out. *Id.* He also says he has "accomplished everything possible to be ready to go home and be a productive member of society." *Id.* Mr. Orton represents his "custody points and recidivism points are both low." *Id.* at 2.

Mr. Orton says that he was to report to a halfway house on October 5, 2023 at 8 am but he is "waiting on the Regional Reentry Manager to approve it." *Id.* at 1. Mr. Orton asserts he remains in prison "because [he] can't afford ANYTHING." *Id.* at 2 (capitalization in original). He further says he "was hoping to be home last July 4th with the one year halfway house for Second Chance Act and completing RDAP. Not to mention about half a year of time credits towards RRC/Home Confinement I earned through the First Step Act for all my education," which he alleges the Bureau of Prisons (BOP) "still hasn't applied which would've put me out last December, almost a year ago." *Id.* Ultimately, Mr. Orton says he's in prison "just waiting for a bed to open at the halfway house." *Id.*

  **B.** **The Government's Opposition**

The Government "opposes the motion on the basis that the BOP should decide how and when to place the Defendant in an RRC [residential re-entry center] or home confinement." *Gov'ts Opp'n* at 1. To support this position, the Government first argues that the "BOP has wide discretion to determine an inmate's place of confinement," i*d.* at 2 (citing *United States v. Whalen*, [No. 1:11-cr-00033-JAW,] 2013 WL 5570955 (D. Me. Oct. 8, 2013)), and that "BOP has the statutory authority to place an inmate into 'any available penal or correctional facility.'" *Id.* (citing 18 U.S.C. § 3621(b)).

As far as Mr. Orton's request to be moved to a residential re-entry center, the Government argues that while an inmate "may be designated to pre-release community confinement during the finals months of their term of imprisonment,"

4

ultimately the "BOP is best suited to evaluate the section 3621(b) factors in order to determine whether and when to place the defendant in a RRC." *Id.* This is so, the Government claims, because "[p]ursuant to administrative regulations accompanying the Second Chance Act, inmates are to be considered for pre-release community confinement 'in a manner consistent with 18 U.S.C. § 3621(b).'" *Id.* (citing 28 C.F.R. § 570.22). These § 3621(b) factors are: 1) "the resources of the facility contemplated"; 2) "the nature and circumstances of the offense"; 3) "the history and characteristics of the prisoner"; 4) certain statements by the court that imposed the sentence; and 5) "any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28." 18 U.S.C. § 3621(b).

The Government argues that Mr. Orton's request for home confinement should also be denied for similar reasons. *Gov't's Opp'n* at 2. The Government says that "[o]nce a sentence is imposed, BOP is solely responsible for determining an inmate's place of incarceration." *Id.* (citing 18 U.S.C. § 3621(b); *and McKune v. Lile*, 536 U.S. 24, 29 (2002) (plurality opinion) ("It is well settled that the decision where to house inmates is at the core of prison administrators' experience")). Moreover, the Government argues, a "court has no authority to designate a prisoner's place of incarceration." *Gov't's Opp'n* at 2 (citing *United States v. Voda*, 994 F.2d 149, 151-52 (5th Cir. 1993)). Relatedly, the Government adds, "18 U.S.C. §3621(b) places the authority to designate the place of imprisonment with the BOP." *Gov't's Opp'n* at 3. What's more, the Government says, "18 U.S.C. § 3624(c) gives the authority to place an inmate in home confinement not to the sentencing judge, but to the BOP." *Id.*

5

Altogether, then, the Government contends the "Court should allow the BOP to exercise the discretion provided by federal law and should refrain from making any decision or recommendation about the defendant's placement in RRC or home confinement." *Id.* The Government adds that as indicated in their Exhibit 1, "BOP is endeavoring to place him at Pharos House," a sober-living recovery house. *Id.* The Government says that the "earliest the defendant could get into placement at Pharos House is March 6, 2024." *Id.* at 1. The Government attached to its memorandum as Exhibit 1, a BOP form entitled, "Institutional Referral for CCC Placement." *Id.* Attach. 1, *Institutional Referral for CCC Placement.* According to the BOP form, on May 20, 2023, Warden Lorenzo Barraza recommended Mr. Orton for RRC placement on August 30, 2023 with a "full range of community programs." *Id.* at 2.

### III. DISCUSSION

18 U.S.C. § 3621 controls the imprisonment of a convicted person. This provision states that: "The [BOP] shall designate the place of prisoner's imprisonment." 18 U.S.C. § 3621(b). It goes on to say that the "[BOP] may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the [BOP] . . . that the [BOP] determines to be appropriate and suitable," after considering certain factors. *Id.* These factors are: 1) "the resources of the facility contemplated"; 2) "the nature and circumstances of the offense"; 3) "the history and characteristics of the prisoner"; 4) certain statements by the court that imposed the sentence; and 5) "any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28." 18 U.S.C. §

3621(b). The statute also explains the relationship between the discretion of the BOP and a court:

> *Any order, recommendation, or request by a sentencing court* that a convicted person serve a term of imprisonment in a community corrections facility *shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person.* Notwithstanding any other provision of law, *a designation of a place of imprisonment under this subsection is not reviewable by any court.*

*Id.* (emphasis supplied).

Here, Mr. Orton is aware that the BOP has recommended him for placement in a halfway house but is asking the Court to intervene and send him immediately to home detention because of the delay in making the transfer to a residential reentry center. The district court addressed this issue in *United States v. Mujo*, No. 1:15-cr-00072-JDL-2, 2023 U.S. Dist. LEXIS 9804 (D. Me. Jan. 20, 2023). *See id.* at *4. A district court "may not order home confinement in the absence of a sentence reduction, either pursuant to 18 U.S.C. § 3621(b) (granting discretion to the BOP to designate the place of imprisonment, subject to certain enumerated factors including the sentencing court's recommendation) or 18 U.S.C. § 3624(c)(2) (authorizing the BOP to order a prisoner to serve the remainder of a sentence in home confinement)." *Id.* at *5.

A court "may grant compassionate release to modify a term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)." *Id.* at *5-6. But a court "may not order the remainder of an *unmodified* term of imprisonment to be served at home." *Id.* at *6 (emphasis in original) (citing *United States v. Texeira-Nieves*, 23 F.4th 48, 59 (1st Cir.

2022)); *see also United States v. Soto*, No. 2:17-cr-00157-JAW, 2022 U.S. Dist. LEXIS 173749, at *28-29 (D. Me. Sept. 26, 2022) ("In *Texeira-Nieves*, the First Circuit noted that despite the wide sweep of the compassionate release provision, the statute does not specifically grant a district court authority to change the site of a defendant's confinement. The First Circuit elaborated that the statute's silence on this point comports with the BOP's plenary control . . . over the place of the prisoner's imprisonment") (cleaned up) (citing *Texeira*, 23 F.4th at 58).

    The upshot is that the only means for the Court to order home detention for Mr. Orton would be to grant compassionate release to him, which is what Mr. Orton is requesting now. *Orton's Mot.* at 1 ("I'm writing to you to ask if you'd consider allowing me Compassionate Release to home confinement"). As just noted, even though the Court has the authority under 18 U.S.C. § 3582(c)(1)(A) to grant compassionate release to Mr. Orton, the Court must find that "extraordinary and compelling reasons warrant" his request for sentence reduction after considering the factors set forth in 18 U.S.C. § 3553(a)—to the extent they are applicable. 18 U.S.C. § 3582(c)(1)(A)(i); *accord Texeira-Nieves*, 23 F.4th at 52 ("Next, the district court must consider any applicable 3553(a) factors and 'determine whether, in its discretion, the reduction … is warranted in whole or in part under the particular circumstances of the case'") (quoting *United States v. Saccocia*, 10 F.4th 1, 4 (1st Cir. 2021)). 18 U.S.C. § 3582(c)(1)(A) also requires any sentence reduction to be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(ii).

The practical constraints on the availability of residential reentry center beds do not meet the "extraordinary and compelling reasons" standard of § 3582(c)(1)(A). The BOP has indicated that a bed may be available in a residential reentry center as early as March 6, 2024, and a further delay of two and a half months does not constitute "extraordinary and compelling reasons" for a sentence reduction. *See* U.S. SENT'G GUIDELINES MANUAL § 1B1.13(b) (U.S. SENT'G COMM'N 2023) (outlining several circumstances that amount to extraordinary and compelling reasons, including suffering from a terminal illness, suffering serious physical, medical, functional, or cognitive impairment, being advanced in age and experiencing deterioration in health because of the aging process, incapacitation of a defendant's family member that is a caregiver, suffering abuse while at the hands of someone who has custody or control over the defendant, unusually long sentences, and other reasons similar in gravity). Moreover, there is a potential benefit for Mr. Orton to step down from federal prison to a residential reentry center, rather than to suddenly be placed on home detention.

The Court is sympathetic to Mr. Orton's interest in moving on with his life as a productive member of society and supporting his sister. The Court is also encouraged by Mr. Orton's efforts at rehabilitation and his demonstrable success. However, the Court is constrained by federal statute and First Circuit precedent, and they make it clear that the Court may not grant Mr. Orton home detention without a reduction in his sentence for "extraordinary and compelling reasons" and he has failed to demonstrate that such reasons exist for his compassionate release.

## IV. CONCLUSION

The Court DISMISSES without prejudice Ryan Orton's Motion for Compassionate Release (ECF No. 95).

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 20th day of December, 2023.